

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROBERT N. DURSO, SUZANNE FAST, :
CATHIE COKE, AND DOUGLAS :
WALKER, individually and on behalf of :
all other persons similarly situated, :
                               :
           Plaintiffs, :
                               :
            v. :
                               :
SAMSUNG ELECTRONICS AMERICA, :
INC., :
           Defendant. :

**Hon. Dennis M. Cavanaugh**

# OPINION

Civil Action No. 2:12-cv-05352 (DMC) (JBC)

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

       This matter comes before the Court upon motion by Samsung Electronics America, Inc.

("Defendant" or "Samsung") to dismiss the Amended Complaint of Robert N. Durso, Suzanne

Fast, Cathie Coke, and Douglas Walker (collectively "Plaintiffs"), pursuant to FED. R. CIV. P.

12(b)(6) and FED. R. CIV. P 9(B) and to Strike Plaintiffs' Class Allegations.  (Defs.' Mot. to

Dismiss, Jan. 29, 2013, ECF No. 22).  Pursuant to FED. R. CIV. P. 78, no oral argument was

heard.  Based on the following and for the reasons expressed herein, Defendant's Motion to

Dismiss is **granted in part** and **denied in part.**  Defendant's Motion to Strike Plaintiffs' Class

Allegations is **denied.**

## I.     <u>BACKGROUND</u>[1]

       Plaintiffs assert this class action against Samsung based on the alleged defective design,

---

[1] The facts set forth in this Opinion are taken from the parties' respective moving papers and filings.

manufacture, warranty, advertisement and sale of Samsung front load washers, including, but not limited to model numbers WF331ANW, WF448AAW, WF1124XAU, WF328AAW, WF209ANWXAA, WF210ANW, WF218ANWXAC, AND WF206ANSW (the "Washers"). Plaintiffs claim the Washers fail to adequately clean clothes; do not spin properly; leave clothes and the surrounding area smelling like mold; and leave deposits of pot metal flakes from the drum on clothes. Plaintiffs assert that Defendant is aware of these and other defects and continues to market, sell and profit from the sale of the Washers. The specific factual backgrounds of each individual plaintiff are as follows:

a. **Plaintiff Durso**

Plaintiff Robert N. Durso ("Durso"), a resident of New Jersey, purchased a new Samsung front load washer (model number WF331ANW) from P.C. Richard & Son for approximately $550.00 on November 8, 2011. Durso selected this particular washer because it was advertised as having the capacity to "wash a full set of your bedding, king-size comforter, or up to 26 bath towels in a single load." When Durso attempted to wash a king size comforter, the washer would not spin properly. He complained to Samsung via telephone and had two service visits but was ultimately informed by the technician that the unit could not spin properly when a king-size comforter was being washed.

a. **Plaintiff Fast**

Plaintiff Suzanne Fast ("Fast"), a New Jersey resident, purchased a new Samsung front load washer (model number WF448AAW/SZZ02) from Sears for approximately $3,000.00 on February 19, 2010. According to Fast, the machine did not function properly as clothes, particularly whites, came out dingy and little black specks appeared on light colored clothes and towels. Fast had the machine serviced by Sears on December 30, 2011 and was informed by the

service technician that Samsung is known for these problems. Fast called and complained to Samsung directly and was told by the customer service representative not to fill the machine more than half full; to use Tide and Clorox; and to set the machine to heavy duty or steam. Fast also consulted a plumber, who advised her to purchase and install lint catchers on the discharge hose to catch the little black pieces of pot metal to prevent clogging the drain.

### b. Plaintiff Cole

Plaintiff Cathie Cole ("Cole"), a Texas resident, purchased a new Samsung front load washer (model number 209ANW/XAA02) from Lowe's for over $500 in May of 2010. Cole stated she purchased the Samsung washer based on an advertisement claiming the washer would wash a king size comforter and used less water than other washers. Cole asserts that the washer did not function properly, leaving clothes smelling like mold and mildew after washing. Cole called Samsung to complain on numerous occasions beginning in May 2010. Samsung made service visits in July and August of 2010 but was never able to correct the problem. In October 2012, Samsung provided Cole with a different washer (model number WF210ANW/XAA). Cole claims that this machine is also defective because it fails to clean clothes adequately; leaves clothes too wet to put in the dryer; and shakes violently at times.

### c. Plaintiff Walker

Plaintiff Douglas Walker ("Walker"), a Texas resident, owns a Samsung front load washer (model number WF206ANS), which was manufactured in March 2007. Walker claims the washer emits strong bad odors which make the laundry room and clothes smell; has a leaky door gasket which caused the door to rust; has an inadequate spin cycle leaving clothes wet at the end of a cycle; and fails to adequately clean the clothes leaving them dingy. Walker complained to Samsung and was told that the machine is no longer covered by warranty.

3

Based on the foregoing facts, Plaintiffs' Amended Class Action Complaint (the "ACAC") asserts the following six causes of action: (1) Violation of New Jersey's Consumer Fraud Act, N.J.S.A.§56:8-2 et. seq. ("NJCFA"); (2) Violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code §1741 et. seq. ("DTPA") (for the Texas sub-class); (3) Fraudulent Concealment/Nondisclosure; (4) Breach of Implied Warranties; (5) Breach of Express Warranties; and (6) Negligent Misrepresentation.

On January 29, 2013, Defendant filed a motion to dismiss the ACAC on various grounds. (ECF No. 22).  As a threshold matter, Defendant argues that Plaintiffs lack standing to bring claims on behalf of purchasers of models they do not own and for alleged defects they did not experience.  Next, Defendant asserts Plaintiffs' consumer fraud claims should be subject to the laws of their respective home states.  Defendant then argues that the claims of the New Jersey Plaintiffs fail under the NJCFA because they cannot demonstrate two essential elements: ascertainable loss and proximate causation.  Similarly, Defendant asserts the Texas Plaintiffs' claims fail because they have not adequately pled reliance or actual damages and because the statute of limitations on the claim has run.  Defendant also makes an argument that all of Plaintiffs' fraud-based claims should be dismissed under Fed. R. Civ. P. 9(b) because Plaintiffs do not allege fraud with sufficient particularity.  In addition, Defendant finds fault with Plaintiffs' claims for breach of implied and express warranties.  Finally, Defendant argues that Plaintiffs' allegations seeking class status should be stricken because they fail to meet the requirements of Fed. R. Civ. P. 23(a).

## II.   **STANDARD OF REVIEW**

### a.  **Motion to Dismiss**

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all

factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555.

A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Id. "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Young v. Speziale, Civ. No. 07-03129, 2009 WL 3806296, at *3 (D.N.J. Nov. 10, 2009) (quoting Iqbal, 556 U.S. at 679). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–that the pleader is entitled to relief." Iqbal, 556 U.S. at 679.

### b.  Motion to Strike Class Allegations

When evaluating a motion to strike allegations of a complaint, the court must accept as true all factual allegations in the complaint and view all reasonable inferences in the light most

favorable to Plaintiffs, just as on a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6). Smikle v. Coca-Cola Enterprises, Inc., Civ. 03-1431(RBK), Slip Op. 7, (D.N.J. May 17, 2004). "Generally courts do not consider whether a proposed class meets the FED.R.CIV.P. 23 class requirements until after plaintiffs move for class certification." 6803 Blvd. E., LLC v. DIRECTV, Inc., 12-CV-2657 WHW, 2012 WL 3133680 (D.N.J. July 31, 2012). However, a defendant may move to strike class action allegations prior to discovery in rare cases "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Landsman & Funk PC v. Skinder–Strauss Associates, 640 F.3d 72, 93 n. 30 (3d Cir. 2011).

     In Korman v. The Walking Co., 503 F.Supp.2d 755, 762–63 (E.D.Pa.2007), the court held that a motion to strike class allegations is premature when a plaintiff has failed to file a motion for class certification. The court reasoned that a motion to strike class allegations under FED.R.CIV.P. 23 is, "for all practical purposes, identical to an opposition to a motion for class certification," and that "[i]t would be improper to allow Defendants to slip through the backdoor what is essentially an opposition to a motion for class certification before Plaintiffs have made such a motion and when discovery on the issue is still ongoing." Id. at 762. See also Bell v. Money Resource Corp., No. 08–639, 2009 WL 382478, at *3 (E.D.Pa. Feb. 13, 2009) (denying a motion to dismiss class allegations because it found that defendant was using the motion to attack the merits of the class itself, which is improper before a motion for class certification has been filed); Rosenberg v. Avis Rent A Car Sys., Inc., No. 07–1110, 2007 WL 2213642, at *4 (E.D.Pa. July 31, 2007) (same); Brothers v. Portage Nat'l Bank, No. 06–94, 2007 WL 965835, at *7 (W.D.Pa. Mar. 29, 2007) (same); Padilla v. GMAC Mortg. Corp., 389 B.R. 409, 447–48 (Bankr.E.D.Pa.2008) (same).

III.   **DISCUSSION**

a.  **Standing**

As dictated by Article III of the United States Constitution, a plaintiff must have standing to bring a suit in federal court.  To establish standing, a plaintiff must show (1) injury in fact, (2) causation, and (3) redressability.  Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 455 (3d. Cir. 2003); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  "Injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560.  As the United States Supreme Court explained further, a "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way."  Id. at 561 n.1.

Defendant argues that since Plaintiffs did not experience three of the eight defects alleged in this putative class action, Plaintiffs do not have standing to assert claims arising from those three alleged defects.  Similarly, Defendant asserts that since Plaintiffs only purchased four of the eight specified models mentioned in the Amended Complaint, Plaintiffs only have standing as to those four models.  Plaintiffs respond that Defendant's argument conflates the requirements of standing with those of class certification under FED. R. CIV. P. 23 and should be rejected as a premature challenge.  Defendant counters that it is Plaintiff who conflates standing with class certification as the majority of cases cited by Plaintiff do not mention standing but address the issue of typicality at the class certification stage.  See Elias v. Ungar's Food Prods., 252 F.R.D. 233, 244 (D.N.J. 2007); Baby Neal v. Casey, 43 F.3d 48, 58 (3d. Circ. 1994); Hoxworth v. Blinder, Robinson & Co., 980 F.3d 912, 923 (3d Cir. 1992); Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d. Cir. 1985).

As the present case illustrates, and as the United States Supreme Court has recognized,

there is clearly an inherent tension between the issues of standing and adequate representation for class certification. See Gratz v. Bollinger, 539 U.S. 244, 263 n. 15 ("Although we do not resolve here whether such an inquiry in this case is appropriately addressed under the rubric of standing or adequacy, we note that there is a tension in our prior cases in this regard."). In Stewart v. Smart Balance, Inc., 2012 U.S. Dist. LEXIS 138454 (D.N.J. June 26, 2012), the court addressed this tension. This Court finds the analysis and conclusion reached in Stewart to be persuasive.

The plaintiffs in Stewart filed a putative class action against Smart Balance on consumer fraud and breach of warranty grounds. Id. at *2. Smart Balance moved to dismiss those claims related to Smart Balance products not actually purchased by the plaintiffs for lack of standing. Id. at *5. As noted by the court in Stewart, courts in this District have held that "standing cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action." Id. (citing In re Franklin Mut. Funds Litig., 338 F. Supp. 2d 451, 461 (D.N.J. 2005); See also Koronthaly v. L'Oreal USA, Inc., 2008 U.S. Dist. LEXIS 59024, at *4 (D.N.J. July 29, 2008), aff'd, 374 F.App'x 257 (3d. Cir. 2010); Lieberson v. Johnson & Johnson Consumer Litig., 865 F. Supp 2d 529 (D.N.J. 2011). However, the Stewart court also noted that "In the class action context...traditional notions of standing are not completely informative of what claims may be asserted." In re Franklin Mut., 388 F. Supp at 461-62.

The defendants in Stewart, as Defendants here, pointed to a number of recent decisions in this District dismissing claims in putative class actions where plaintiffs only alleged injury as to one product in a series of products by the same defendant. See Lieberson, 865 F.Supp 529; Green v. Green Mountain Coffee Roasters, Inc., 279 F.R.D. 275, 280 (D.N.J. 2011), Hemy v. Perdue Farms, Inc., 2011 U.S. Dist. LEXIS 125301, *10-11 (D.N.J. Oct. 31, 2011). After recognizing these decisions, the Stewart court then went on to highlight decisions of the Third

Circuit Court of Appeals, also cited to by Plaintiffs here, where plaintiffs were allowed to represent a class suffering injuries distinct from their own as long as they resulted from the same policy or practice of the defendant.  See Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 58 (3d. Cir. 1994) ("where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."); Haas v. Pittsburgh Nat'l Bank, 526 F.2d 1083, 1088-89 (3d. Cir. 1975) (notwithstanding the fact that plaintiff lacked standing to pursue a particular claim, she could assert that claim in a putative class action where she did have standing to pursue two closely related claims against the same defendant.).

Ultimately, the court in Stewart determined that although the plaintiffs did not have standing to bring claims related to products they did not purchase themselves, dismissal was inappropriate at such an early stage in the litigation because whether or not those plaintiffs may represent a class of plaintiffs who do have standing was not yet before the court.  This Court agrees and finds that dismissal of Plaintiffs' claims related to products Plaintiffs did not purchase or defects Plaintiffs did not suffer would be premature at this time.  As such, Defendant's motion to dismiss Plaintiffs' claims for lack of standing is **denied.**

### b.  Consumer Fraud Claims

Plaintiffs assert consumer fraud claims under both New Jersey and Texas law.  Defendant argues that Plaintiffs have failed to adequately state claims under both the NJCFA and the DTPA and therefore those claims should be dismissed.  As a threshold matter, before addressing the consumer fraud claims, this Court must determine whether a choice of law analysis is appropriate at the motion to dismiss stage of this litigation and if so, which law applies.

9

### i.     Choice of Law

Plaintiffs believe it is premature for this Court to resolve choice of law issues at this early stage of litigation and cite to a number of decisions in this District postponing the choice of law analysis. See Harper v. LG Electronics USA, Inc., 595 F. Supp. 2d 486 (D.N.J. 2009); In re K-Dur Antitrust Litigation, 338 F. Supp. 2d 517 (D.N.J. 2004); Samsung DLP Television Class Action Litigation, Civ. No. 07-2141, 2009 U.S. Dist. LEXIS 100065, at *3 (D.N.J. Oct. 27, 2009). Defendant points to other decisions in this District, including the Third Circuit Court of Appeals, in which the court determined choice of law analysis to be appropriate at the motion to dismiss stage. See Feldman v. Mercedes-Benz USA, LLC, 2012 U.S. Dist. LEXIS 178924 *13 (D.N.J. Dec. 18, 2012); Weske v. Samsung Elecs. Am., Inc., 2012 U.S. Dist. LEXIS 32289, *12 (D.N.J. Mar. 12, 2012); Cooper v. Samsung Elecs. Am., Inc., 2008 U.S. Dist. LEXIS 75810 (D.N.J. Sept. 30, 2008), aff'd, 374 F. App'x 250 (3d Cir. 2010). The court in Harper, though deferring choice of law analysis, noted that "some choice of law issues many not require a full factual record and may be amenable to resolution on a motion to dismiss." 595 F. Supp 2d. at 491. Essentially, courts in this District have interpreted Harper to require a threshold inquiry into whether a choice of law analysis is appropriate at the motion to dismiss stage or requires a fuller factual record. See Snyder v. Farnam Cos., 792 F. Supp. 2d 712, 718 (D.N.J. 2011).

Plaintiffs fail to explain or even address what other facts are necessary to decide the choice of law issue. Harper is distinguishable from the present case because it involved twenty-four plaintiffs from thirteen different states. 595 F. Supp. 2d 486. This case, at present, only involves four named plaintiffs and two different states. As such, this Court finds that the current factual record is sufficient to engage in a choice of law analysis.

10

A federal district court sitting in diversity must apply the forum state's choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co., 960 F.2d 377, 379 (3d Cir. 1992). In conducting a choice of law analysis, New Jersey employs the "most significant relationship" test. P.V. v. Camp Jaycee, 197 N.J. 132, 155 (2008) ("In balancing the relevant elements of the most significant relationship test, we seek to apply the law of the state that has the strongest connection to the case"). The most significant relationship test consists of two prongs. The first prong requires a determination as to whether an "actual conflict" exists between New Jersey law and the law of the competing state. Id. at 143. If no actual conflict exists, the inquiry is over and New Jersey law applies. See In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997). If there is a conflict, the inquiry proceeds to the second prong of the test.

Conflicts do exist between the New Jersey and Texas laws. For instance, the DTPA requires that a plaintiff prove reliance on alleged misrepresentations. Tex. Bus. & Com. Code § 17.46(b)(24). Treble damages are discretionary under the DTPA and are only available when a plaintiff establishes that the wrongful act was committed knowingly. Id. at§17.50. Attorneys' fees are available to both plaintiffs and defendants under the DTPA, Id. at §17.50(c), and the DTPA has a two year statute of limitations. Id. at §17.565. In contrast, the NJCFA does not require a showing of reliance. Cooper, 2008 U.S. Dist. LEXIS 75810 at *6. Treble damages and attorneys' fees are mandatory under the NJCFA, but the NJCFA does not permit a defendant to recover attorneys' fees, N.J.S.A. 56:8-2, and the statute of limitations for NJCFA claims is six years. N.J.S.A. 2A:14-1. As an actual conflict exists between the laws of the two states, the Court must proceed to the second prong of the test.

The second prong of the significant relationship test, as applied to consumer fraud claims, requires the Court to consider factors set forth in Section 148 of the Restatement (Second) of Conflicts of Law. See Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 462 (D.N.J. 2009). Section 148 has two subsections. See Feldman, 2012 U.S. Dist. LEXIS 178924 at *15. Section 148(1) governs when the defendant made the fraudulent representations in the same state in which the consumer's reliance occurred. Id. Section 148(2) applies "when the misrepresentations and the reliance occurred in different states." Id. Plaintiffs do not make clear where the alleged misrepresentations were made. However, this Court chooses to follows Third Circuit precedent and the decisions of a number of other courts in this District in finding that the alleged misrepresentations were made at the Defendant's headquarters, not in the consumer's home states. See e.g. Feldman, 2012 U.S. Dist. LEXIS 178924 at *16; Cooper, 374 F. App'x at 255; Nikolin v. Samsung Elecs. Am., Inc., No. 10-1456, 2010 U.S. Dist. LEXIS 110942, at *3-4 (D.N.J. Oct. 18, 2010). Thus, the Court will apply Section 148(2).

Under Section 148(2), courts consider the following six factors:

(a) the place or places, where the plaintiff acted in reliance upon the defendant's representations,
(b) the place where the plaintiff received the representations,
(c) the place where the defendant made the representations,
(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
(e) the place where the tangible thing which is the subject of the transaction between the parties was situated at the time, and
(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2). As to the Texas Plaintiffs, factors (a), (b), (e), and (f) all occurred in Texas and therefore weigh in favor of applying Texas law.

As discussed above, this Court finds any alleged misrepresentations would have been made at Defendant's headquarters and therefore factor (c) weighs in favor of New Jersey. As for factor (d), Plaintiffs reside in Texas and Defendant's headquarters are located in New Jersey. This factor also therefore tips in favor of New Jersey. As four of the six factors weigh in favor of applying the law of Plaintiffs' home state, this Court will apply Texas law to the Texas Plaintiff's consumer fraud claims. In doing so, "this court follows a long line of cases in this Circuit holding that a consumer's home state law should apply to transactions that 'bear no relationship to New Jersey other than the location of [the defendant's] headquarters.'" Feldman, 2012 U.S. Dist. LEXIS 178924 at *18 (quoting Cooper, 374 F. App'x at 225); see also Nikolin, 2010 U.S. Dist. LEXIS 110942, at *4; Agostino I, 256 F.R.D. at 464; Warma Witter Kreisler, Inc., 2010 U.S. Dist. LEXIS 34584, at *1-2 (D.N.J. Apr. 8, 2010); In re Philips/Magnavox TV Litig., No. 09-3072, 2010 U.S. Dist. LEXIS 91343, at *9-10 (D.N.J. Sept. 1, 2010).

     ii.     **NJCFA Claim**

Defendant asserts that Durso and Fast's NJCFA claims fail because Plaintiffs have not alleged an ascertainable loss or proximate causation. To succeed on a claim under the NJCFA, plaintiffs carry the burden of showing each of three elements: (1) an unlawful practice by defendant, (2) an ascertainable loss on the part of plaintiffs, and (3) a causal relationship between the defendant's unlawful conduct and the plaintiffs' ascertainable loss. Cox v. Sears Roebuck & Co., 138 N.J. 2, 24 (1994).

     a.  **Ascertainable Loss**

"Under the [NJCFA], a plaintiff must demonstrate an 'ascertainable loss,' which is defined as 'a cognizable and calculable loss due to the alleged [NJCFA] violation.'" Solo v.

Bed Bath & Beyond, Inc., 2007 U.S. Dist. LEXIS 31088, *7-8 (D.N.J. April 26, 2007) (quoting Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 249 (2005)). "In a misrepresentation case, a plaintiff may show ascertainable loss by 'either out-of-pocket loss or a demonstration of loss in value.'" Green, 279 F.R.D. at 281 (quoting Thiedemann, 183 N.J. at 248). An actionable loss is not "hypothetical or illusory." Thiedemann, 183 N.J. at 248. "What New Jersey Courts require for that loss to be 'ascertainable' is for the consumer to quantify the difference in value between the promised product and the actual product received." Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84 (D.N.J. 2011).

In Green, the plaintiff's NJCFA claim was premised on the defendant's alleged misrepresentation about its coffee brewing system. 279 F.R.D. at 278. The court found that the plaintiff did not sufficiently plead ascertainable loss, as he "fail[ed] to allege how much he paid for his brewer and how much other comparable brewers manufactured by Defendant's competitors cost at the time of purchase." Id. at 282. Here, Plaintiffs Durso and Fast have provided in their complaint how much they paid for their Samsung Washers. However, they have failed to allege how much comparable washers by Defendant's competitors cost at the time of purchase. Therefore, Plaintiffs have not quantified the difference in value between the washer promised and the actual washer received. As such, Plaintiffs have failed to adequately plead ascertainable loss under the NJCFA. Count one of Plaintiffs' complaint is therefore **dismissed without prejudice.**

### b. Proximate Causation

Under the NJCFA, a plaintiff must demonstrate that his or her ascertainable loss was "attributable to conduct made unlawful by the [Act]." Thiedemann, 183 N.J. at 246. A plaintiff must therefore "plead and prove a causal nexus between the alleged act of consumer

14

fraud and the damages sustained." New Jersey Citizen Action v. Schering-Plough Corp., 367

N.J. Super. 8, 15 (N.J. App. Div. 2003). In Mccalley v. Samsung Elecs. Am., Inc., 2008 U.S.

Dist. LEXIS 28076, at * 26 (D.N.J. Mar. 31, 2008), the court found a plaintiff's assertion that

had the alleged defect been disclosed, consumers would not have purchased the defendant's

product sufficient to establish the requisite causal connection. It is clear from the ACAC, that if

Plaintiffs had been made aware of the alleged defects in Samsung's Washers, they would not

have purchased them. As such, Defendant's motion to dismiss the NJCFA on grounds that a

causal connection has not been established is **denied.**

### iii.  DTPA

Defendant asserts Cole's DTPA claim fails as a matter of law because (a) it is beyond the

statute of limitations; (b) Cole fails to adequately plead reliance; and (c) Cole does not

adequately plead actual damages.[2]  As a threshold matter, Defendant argues that Cole's DTPA

claim is barred by DTPA's two-year statute of limitations. Tex. Bus. & Com. Code § 17.565.

According to the ACAC, Cole became aware of the alleged defects with her original washer as

early as May 2010 and Samsung provided her with a new washer in October 2010. (ACAC ¶¶

34-36). The ACAC, however, was not filed until December 17, 2012, more than two years after

her discovery of the alleged defects. Although Cole's DTPA claim related to her original washer

is time-barred, Cole also alleges that her replacement washer is defective. Since Samsung cannot

establish Cole discovered the defects in the replacement washer prior to December 17, 2010,

Cole's DTPA claim for the replacement washer is not defeated by the DTPA's statute of

limitations. See Eshleman v. Shield, 764 S.W.2d 776, 777 (Tex. 1989) (In construing section

17.565, the Supreme Court of Texas recognized the defendant bears the burden of establishing

---

[2] Plaintiff Walker does not assert a claim under the DTPA.

when the plaintiff discovered or should have discovered the acts giving rise to the cause of action.).

Defendant alleges that Cole fails to sufficiently plead reliance under the DTPA.  In order to state a claim under the DTPA, a plaintiff "must demonstrate that she 'would not have entered into the transaction had the information been disclosed." Nikolin, 2010 U.S. Dist. LEXIS 110942 at *18 (quoting Paterson v. McMickle, 191 S.W.2d 819, 827 (Tex. App. 2006)).  As alleged in the ACAC, one reason Cole decided to purchase a Samsung washer was because she was impressed by television advertisements claiming they used less water than other washers. (ACAC ¶ 38).  Although Cole relied on this in purchasing the original machine, and her claim related to that machine is time-barred, it is as a result of this reliance that Cole ended up with the replacement washer and therefore the Court will consider it.   According to the ACAC, unless Cole uses the heavy duty cycle, which requires the use of more water and electricity, her daughter's bibs do not get clean.  (ACAC ¶ 37).   Based on these facts, it is clear that Cole would not have purchased the initial washer if she knew that it would require a cycle requiring the use of more water to adequately clean clothes.  As such, the Court finds that Cole has adequately pled reliance under the DTPA.

Defendant asserts that Cole's DTPA claim fails because she does not allege actual damages.  "[A]ctual damages are required to state a cause of action under the [DTPA]." McManus v. Sears Roebuck and Co., 2003 Tex. App. LEXIS 7462, *10 (Tex. App. Aug. 28, 2003).  Cole claims she suffered damages because she had to purchase new clothes to replace those that were ruined by the odor emitted by the original washer.  (ACAC ¶ 39).  Cole does not allege she had to purchase any new clothes as a result of the replacement washer or at what cost. Cole also claims that her washer is "of lesser value than the washer promised."  (ACAC ¶ 39).

16

The Court finds that Cole's claims are too ambiguous to sufficiently demonstrate actual damages.  Cole's DTPA claim is therefore **dismissed without prejudice**.

### iv.    FED. R. CIV. P. 9(b)'s heightened pleading requirement.

Defendant asserts that Plaintiffs' fraud-based claims are subject to dismissal pursuant to FED. R. CIV. P. 9(b)'s heightened pleading requirement.  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).  The Court agrees with Defendant that the ACAC does not "provide sufficient factual allegations to establish that Samsung knew of the [alleged defects] prior to the sale at issue in this litigation."  Weske, 2012 U.S. Dist. LEXIS 32289, *17-18.

Plaintiffs claim that Samsung knew of the alleged defects "beginning no later than 2004." (ACAC ¶ 89(c)).  However, Plaintiffs do not provide any factual basis for this assertion.  The only customer complaints referenced in the ACAC, aside from Plaintiffs' own complaints, are internet postings which occurred after August 2011.  (ACAC ¶¶ 74-75).  All of these postings postdate Fast, Cole and Walker's purchases and fifteen of them postdate Durso's purchase. Although the Court recognizes that at this early stage of litigation, prior to discovery, facts in the sole possession of Defendant are difficult to access, there is not enough in the ACAC for the Court to draw an inference that the Washers were defective from the time of manufacture and that Samsung knew that fact as early as 2004.  See Tatum v. Chrysler Group LLC, 2011 U.S. Dist. LEXIS, *15-18 (D.N.J. Mar. 28, 2011) (recognizing that facts in defendant's possession are hard to come by before discovery but dismissing complaint for lack of specificity under Rule

9(b) because facts were insufficient for Court to draw inference that the braking systems were defective at time of manufacture); Weske, 2012 U.S. Dist. LEXIS 32289 at *17 (court dismissed fraudulent concealment claims for lack of specificity under Rule 9(b) acknowledging that plaintiffs "need not allege specific information that is exclusively within Samsung's knowledge or control, but they must still allege facts suggesting fraudulent concealment and must still explain why the additional missing information lies exclusively within Samsung's control"). Therefore, Plaintiffs' fraud-based claims, specifically (1) violation of the NJCFA (Count One); (2) violation of the DTPA (Count Two); and (3) fraudulent concealment (Count Three) **are dismissed without prejudice** pursuant to Fed. R. Civ. P. 9(b).

### c.  Negligent Misrepresentation

The Court finds it appropriate to analyze Plaintiffs' negligent misrepresentation claim under the notice pleading standard of Fed. R. Civ. P. 8(a).  See Dewey v. Volkwagen AG, 558 F. Supp. 2d 505, 529 (D.N.J. 2008).  Plaintiffs concede that a negligent misrepresentation claim based on alleged omissions by Samsung fails as a matter of law because Plaintiffs and Samsung do not have a fiduciary relationship.  See Henderson v. Volvo Cars of N. Am. LLC, 2010 U.S. Dist. LEXIS 73624, *33-36 (D.N.J. July 21, 2010); Alin v. Am. Honda Motor Co., 2010 U.S. Dist. LEXIS 32584, *37-38 (D.N.J. Mar. 31, 2010).  However, Plaintiffs have sufficiently pled a claim for negligent misrepresentation based on affirmative misrepresentations.  Under New Jersey law a "cause of action for negligent misrepresentation may exist when a party negligently provides false information."  Karu v. Feldman, 119 N.J. 135, 574 (1990).  "To prevail on a negligent misrepresentation claim, a plaintiff must prove that the defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied."  Alexander v. CIGNA Corp., 991 F. Supp. 427, 440 (D.N.J. 1998) (citing H. Rosenblum, Inc. v. Adler, 93 N.J. 324 (1983)).

In the ACAC, Durso asserts that the advertising for the washer, as well as the User Manual provided that it "can wash a king-size comforter…in a single load" and that he relied on this statement in selecting a Samsung washer.  (ACAC ¶¶ 15, 18, 19).  Fast alleges that she "relied upon Samsung's advertising and literature indicating that Samsung's machines were efficient and top of the line appliances" but that the machine she purchased was inefficient and required the use of extra water and electricity to sufficiently clean her clothes.  (ACAC ¶¶ 27, 29, 30).  Cole alleges she relied on television ads claiming Samsung machines used less water than other washers in purchasing her machine and that her washer requires additional water and electricity to adequately clean clothes.  (ACAC ¶¶ 37, 38).  The Court finds these facts are sufficient to allege proximate cause and reliance with respect to a claim for negligent misrepresentation under the Rule (8)(a) standard.  As such, Plaintiffs' negligent misrepresentation claim based on affirmative misrepresentations survives the motion to dismiss.

### d.  Breach of Implied and Express Warranty Claims

Defendant argues that Plaintiffs implied warranty claims should be dismissed as they are expressly disclaimed.  New Jersey law generally recognizes disclaimers and will enforce them as long as they are clear and conspicuous.  See N.J.S.A. 12A:2-316; Realmuto v. Straub Motors, Inc., 65 N.J. 336, 341-42 (1974).  Samsung's disclaimer is located at the end of the user manual and appears in all capital letters as follows:

> EXCEPT AS SET FORTH HEREIN, THERE ARE NO WARRANTIES ON THIS PRODUCT EITHER EXPRESS OR IMPLIED, AND SAMSUNG DISCLAIMS ALL WARRANTIES INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE.

(Def.'s Decl. Ex. A, ECF No. 10).  Plaintiffs have not provided an argument as to why the disclaimer is not clear and conspicuous.

19

However, Plaintiffs do argue that Samsung's attempts to disclaim all implied warranties and limit all express and implied warranties to a one-year period is unconscionable.  Plaintiffs cite to this Court's decision in <u>Henderson v. Volvo Cars of N. Am., LLC</u>, No. 09-4146, 2010 U.S. Dist. LEXIS 73624 (D.N.J. July 21, 2010) to support their argument.  In <u>Henderson</u>, this Court allowed the plaintiffs' express warranty claim to survive the motion to dismiss stage.  <u>Id.</u> at *26.  This Court acknowledged that a manufacturer's mere knowledge that a part will ultimately fail after the expiration of a warranty period is insufficient to prove that the time limitation is unconscionable.  <u>Id.</u>  However, the plaintiffs in <u>Henderson</u> had alleged additional claims to support their unconscionability argument, including that the class members had no meaningful choice in determining the time limitations and a gross disparity in bargaining power existed between Samsung and class members.  <u>Id.</u> at n.6.  Thus, based on the plaintiffs' unconscionability argument, this Court chose not to dismiss the express warranty claim.

Here, Plaintiffs' unconscionability argument is based on two basic contentions: (1) that Samsung allegedly had knowledge of the defect prior to the sale of the Washers; and (2) that Samsung's repair services were allegedly employed to intentionally mask the underlying defect until after the expiration of the warranty.  As this Court stated in <u>Henderson</u>, a manufacturer's mere knowledge that a part will fail after the warranty period is insufficient to prove that the limitation is unconscionable.  The Court finds Plaintiffs' second contention about Samsung's repair services to be an unsupported conclusory allegation without sufficient factual support.  As such, Plaintiffs' unconscionability argument is not supported by sufficient facts to save Plaintiffs' warranty claims from dismissal.

The ACAC is also factually deficient with respect to the manifestation of the defects and the notice provided to Samsung.  It is not clear from the ACAC whether the defects manifested

20

and whether Samsung was notified within the one-year warranty period.  For example, as to Durso, the ACAC states that he "attempted to wash a king size comforter and the washer would not spin properly" and that he "complained to Samsung," but it does not provide even an approximation of when these two events occurred.  (ACAC ¶¶ 16, 17).  Similarly, as to Fast, the ACAC provides that "the washing machine does not function properly" and that "Fast called and complained to Samsung directly," but does not state when the defect first manifested or when the call was made.  (ACAC ¶¶ 24, 26).  The ACAC also states that the machine was serviced by Sears on December 30, 2011, more than a year after the February 19, 2010 purchase date.  (ACAC ¶¶ 22, 25).  Although it is true, as Plaintiffs' assert, that "this does not establish that Fast's complaints were not registered prior thereto," (Pls.' Opp'n Br. 48 n.10), the ACAC nonetheless fails to make clear when, in fact, such complaints were registered.  The ACAC does plead sufficient facts as to Cole's first washer.  It provides the dates Cole complained to Samsung as well as the dates of service visits. (ACAC ¶¶ 34, 35).  However, it fails to provide when the defect in the second washer appeared and when Samsung was notified.  Without these facts, it is difficult for the Court to assess whether Plaintiffs' claims are brought within or outside the warranty period.

Generally, the ACAC is factually deficient to support Plaintiffs' claims for breach of implied and express warranties.  First, Plaintiffs do not sufficiently contest the validity of Samsung's express disclaimer of all implied warranties.  Second, Plaintiffs do not offer a valid basis, beyond Samsung's alleged knowledge of a defect, to support their unconscionability argument.  Finally, the ACAC does not provide sufficient facts to demonstrate precisely when the defects manifested themselves and when Samsung was notified of the defects.  Specifically, it is unclear whether the defects appeared and Samsung was notified within the one-year

warranty period.  For these reasons, Count Four (Breach of Implied Warranties) and Count Five (Breach of Express Warranties) are **dismissed without prejudice.**

### e.  Motion to Strike Class Allegations

Defendant argues that Plaintiffs' class allegations should be stricken because Plaintiffs cannot satisfy the requirements of predominance, typicality and numerosity.  Dismissal of class claims prior to discovery and a motion to certify the class by plaintiff is the exception rather than the rule.  See Ehrhart v. Synthes (USA), No. 07-01237, 2007 U.S. Dist. LEXIS 94760, *7-9 (D.N.J. Dec. 21, 2007) (motion to strike highly disfavored and dismissal of class allegations should be done rarely); Gutierrez v. Johnson & Johnson, Inc., No. 01-5302, 2002 U.S. Dist. LEXIS 15418, *16 (D.N.J. 2002) (citing Abdallah v. Coco-Cola Co., 1999 U.S. Dist LEXIS 23211 (D.Ga. July 16, 1999) (dismissal of class allegations at this stage should be done rarely; the better course is to deny the motion because "the shape and form of a class action evolves only through the process of discovery.").  In Andrews v. Home Depot U.S.A. Inc., this Court found the dismissal of class action allegations to be premature at the motion to dismiss stage.  Civ. A. 03CV5200, 2005 WL 1490474, at *3 (D.N.J. June, 23, 2005).  As in Andrews, the Court finds that dismissal of Plaintiffs' class action allegations at this stage of the litigation would be premature and is not appropriate.  Therefore, Defendant's Motion to Strike Plaintiffs' class allegations is **denied.**

IV.     IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **granted in part** and **denied in part.** Defendant's Motion to Strike Plaintiffs' Class Allegations is **denied.** Counts One, Two, Three, Four and Five of Plaintiffs' Amended Class Action Complaint are **dismissed without prejudice.** Plaintiffs are granted leave to file a second amended complaint. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:       November  6, 2013
Original:   Clerk's Office
cc:         Hon. James B. Clark, U.S.M.J.
            All Counsel of Record
            File

23