NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**ROBERT N. DURSO, CATHIE COLE, and DOUGLAS WALKER, individually and on behalf of all other persons similarly situated,**

**Plaintiffs,**

**v.**

**SAMSUNG ELECTONICS AMERICA, INC.,**

**Defendant.**

Docket No.: 12-cv-5352

**OPINION**

**WILLIAM J. MARTINI, U.S.D.J.:**

Defendant Samsung Electronics America, Inc. filed this motion to dismiss the Second Amended Complaint ("SAC"). Plaintiffs opposed. There was no oral argument. L. Civ. R. 78.1(b). For the reasons set forth below, the motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND

Plaintiffs represent a putative class of customers who purchased allegedly defective Samsung front-loading washing machines, model numbers WF331ANW, WF448AAW, WF1124XAU, WF328AAW, WF209ANWXAA, WF210ANW, WF218ANWXAC, and WF206ANSW (the "Washers"). (SAC at ¶ 2). Named Plaintiffs are individuals residing in New Jersey and Texas.

The SAC alleges that the Washers have a variety of defects. For example, the Washers allegedly do not spin and drain properly. (SAC at ¶ 2). The Washers

allegedly do not wash large items despite Samsung's advertising that the Washers have a "super capacity." (*Id.*). The Washers allegedly do not properly clean clothes and frequently display "error messages" to the user. (*Id.*). The SAC also complains of frequent mold and mildew smells within the Washers and on clothes that were just washed, frequent instances of premature failure of the pump, and collection of "pot metal" in the hose. (*Id.*). Finally, the SAC complains of premature disintegration of the rubber inside the washer, resulting in leaks and damage to clothing. (*Id.*). The Plaintiffs also contend that the Washers require numerous service calls and repairs, which frequently fail to correct the defects. (*Id.*).

Plaintiffs collectively allege that Samsung knew of the defects via several channels. Aside from their own complaints to Samsung, the Plaintiffs point to internet postings on Samsung's website and various other third-party websites detailing consumers' problems with the Washers since at least 2009. (SAC ¶ 65). Alternatively, the Plaintiffs allege that Samsung was aware of the problems through its Global Service Partnership Network ("GSPN") and its Service Bench warranty database. (SAC ¶ 72). The SAC also alleges that Samsung knew the repairs it performed on the Washers would not cure the defects and refused to offer customers a refund or a replacement washer that would function properly. (*Id.*).

### A. Plaintiff Durso

Plaintiff Durso, a New Jersey resident, purchased a new Samsung front-loading washer (model number WF331ANW) from P.C. Richard & Son for approximately $549.97 on November 8, 2011. (SAC ¶ 13). The advertising for this washer and the user manual stated that the washer had "extra large capacity" and was able to "wash a full set of your bedding, king-size comforter, or up to 26 bath towels in a single load." (SAC ¶ 15). When Durso attempted to wash a king-size comforter, the washer would not spin properly. (SAC ¶ 16). He complained to Samsung via telephone and had two service visits, but the technician ultimately informed him that the unit could not spin properly when a king-size comforter was being washed. (SAC ¶ 17).

### B. Plaintiff Cole

Plaintiff Cole, a Texas resident, purchased a new Samsung front-loading washer (model number 209ANW/XAA02) from Lowe's for over $500.00 in or about May of 2010. (SAC ¶ 22). Cole claims that she purchased the Samsung washer based on television advertisements showing the washer's ability to handle a king-size comforter, as well as the washer's water efficiency. (SAC ¶ 29). Cole asserts

that the washer did not function properly, leaving clothes smelling like mold and mildew after washing. (SAC ¶ 24). Cole called Samsung to complain on four occasions beginning in May 2010. (SAC ¶ 25). Samsung made service visits in July and August 2010 but was unable to correct the problem. (SAC ¶ 26). In October 2010, Samsung replaced Cole's washer with a different washer (model number WF210ANW/XAA). (SAC ¶ 27). Cole claims that this machine is also defective because it fails to clean clothes adequately unless the heavy duty cycle is used, leaves clothes too wet to put in the dryer, and shakes violently at times. (SAC ¶ 28). Cole does not allege that she notified Samsung about her problems with the second washer.

### C. Plaintiff Walker

Plaintiff Walker, a Texas resident, owns a Samsung front-loading washer (model number WF206ANS), which was manufactured in March 2007. (SAC ¶ 31). Walker did not purchase this washer. He became the owner of the washer when he purchased a home containing the washer. (See Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss the Amended Class Action Complaint, ECF No. 33, at 18). Walker claims the washer has numerous problems, including: emitting bad odors that make the laundry room and clothes smell, a leaky door gasket that caused the door to rust, an inadequate spin cycle that leaves clothes too wet, and failing to clean clothes adequately, leaving them dingy at the end of a cycle. (SAC ¶¶ 33-37). Walker complained to Samsung but does not say when. (SAC ¶ 38). Samsung told Walker that his washer is no longer covered by warranty. (*Id.*).

## II. PROCEDURAL BACKGROUND

Plaintiffs filed an Amended Class Action Complaint ("ACAC") on December 12, 2012. (ECF No. 12). Defendant filed a motion to dismiss, which Judge Cavanaugh granted in part and denied in part on November 6, 2013 ("Cavanaugh Opinion," ECF No. 51). Plaintiffs filed a Second Amended Complaint ("SAC") on December 6, 2013. (ECF No. 54). Both the ACAC and the SAC contain the same causes of action:

Count 1: Violation of the New Jersey Consumer Fraud Act ("NJCFA")
Count 2: Violation of the Texas Deceptive Trade Practices Act ("DTPA")
Count 3: Fraudulent Concealment/Nondisclosure
Count 4: Breach of Implied Warranties
Count 5: Breach of Express Warranties
Count 6: Negligent Misrepresentation

Walker did not join in Counts 1 or 2 because he admits that he did not purchase his washer but became the owner of his washer when he purchased a home containing the washer. (Opposition Brief to Defendant's Motion to Dismiss the ACAC, ECF No. 33 at 18).

Also, of note, Judge Cavanaugh applied a choice of law analysis, finding that the court should apply the law of the Plaintiffs' home states wherever a conflict of law exists. (Cavanaugh Opinion at 10-13).

Judge Cavanaugh dismissed the first five counts of the Complaint without prejudice. In the SAC, Plaintiffs attempted to fortify the portions of the ACAC that Judge Cavanaugh found deficient.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

## IV. DISCUSSION

### A. Fraud Actions

Judge Cavanaugh dismissed the three consumer fraud claims (Counts 1-3), in part, because Plaintiffs failed to plead, pursuant to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), facts that plausibly demonstrated that Samsung had knowledge of the alleged defects before Plaintiffs made their purchases. In the ACAC, Plaintiffs plead that Samsung knew of the defects "beginning no later than 2004" based upon nineteen internet postings, which occurred after August 2011. (ACAC at ¶¶ 74-75, 89(c)). All of these postings postdated Cole and Walker's purchases, and fifteen of them post-dated Durso's purchase. (Cavanaugh Opinion at 17). The court held that these internet postings were not sufficient to allege that Samsung knew of the defects.

In the SAC, Plaintiffs have added an additional basis for Samsung's knowledge. The SAC alleges that GSPN (Global Service Partnership Network) Service Center received many requests for warranty service of the specific problems that the Plaintiffs suffered. (SAC ¶ 68). It goes on to allege:

> On information and belief, Samsung utilizes Service Bench online software to track warranty claims which provides Samsung with the ability to mine data for strategic information about its products and the nature of repair claims. Consequently, Samsung should have been aware of the large number of similar, repeat complaints received regarding specific models and the failure of repairs attempted over and over again to remedy those specific defects.

(SAC at ¶ 68).

Defendant argues that this allegation is still not specific enough to meet the heightened pleading standard of Rule 9(b). The court finds Plaintiffs' additional factual allegations meet the Rule 9(b) standards.

Rule 9(b) states, "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud." To satisfy this standard, "the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "The purpose of Rule 9(b) is to

provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n. 2 (3d Cir. 2003).

"Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (*quoting Christidis v. Pennsylvania Mortgage Trust*, 717 F.2d 96, 99-100 (3d Cir. 1983)); *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) ("Courts should . . . apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants."). "Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs." *Craftmatic*, 890 F.2d at 645 (*citing Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)). In such cases where Rule 9(b) is to be applied less strictly, the Plaintiffs must plead that the necessary information lies within the defendants' control and their allegations must be accompanied by a statement of the facts upon which the allegations are based. *Id.* at 645. Moreover, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

In other consumer fraud cases, courts in this district have found that internal data regarding warranty claims suffices to plead knowledge under Rule 9(b). *See, e.g.*, *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626 (D.N.J. Oct. 9, 2013); *Feldman v. Mercedes-Benz USA, LLC*, 2012 WL 6596830, at *11 (D.N.J. Dec. 18, 2012). With its allegations that Samsung knew about the defects through data within its exclusive control, Plaintiffs have plausibly plead that Samsung knew of the Washers' defects.

That the allegations are made on "information and belief" does not defeat the claim, as the Defendant argues. (Moving Brief at 16). Under the Rule 9(b) standard, the allegations suffice if they are more than conclusory and make a theoretically viable claim "plausible." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). Allegations that a corporate defendant had internal knowledge of warranty claims is "not conclusory." *Majdipour*, 2013 WL 5574626, at *18. The Plaintiffs' theory that Samsung knew about the defects through warranty claims and the GSPN are plausible.

**B. NJCFA**

"To state a prima facie case under the CFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Payan v. Greenpoint Mortg. Funding, Inc.*, 2010 WL 5253016, at *5 (D.N.J. 2010) (*citing Bosland v.Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)). Judge Cavanaugh found Plaintiff's allegations deficient only as to the ascertainable loss element. The Cavanaugh Opinion states:

> Here, Plaintiff[] Durso [has] provided in [his] complaint how much [he] paid for [his] Samsung Washer[]. However, [he has] failed to allege how much comparable washers by Defendant's competitors cost at the time of purchase. Therefore, Plaintiff[] [has] not quantified the difference in value between the washer promised and the actual washer received. As such, Plaintiff[] [has] failed to adequately plead ascertainable loss under the NJCFA. (ECF No. 51 at 14).

The Cavanaugh Opinion cited *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011) for the proposition that a plaintiff alleging an NJCFA claim for a defective machine must allege "how much he paid for [the machine] and how much other comparable [machines] manufactured by Defendant's competitors cost at the time of purchase." *Id.* at 282.

In the SAC, Durso fortified the allegations by alleging that a comparable washer, the Frigidaire Affinity 3.7 ft.³ High Efficiency model, cost $799. (SAC at ¶ 20). Additionally Plaintiff alleges that he had to spend money to have the king-size comforters laundered when the washer failed to work as advertised. (SAC ¶ 20).

Samsung argues that "it is inexplicable how a washer costing 45% more than Durso's Samsung washer could possibly demonstrate his alleged ascertainable loss." (Moving Brief at 22). Plaintiff argues in opposition that: (1) Judge Cavanaugh ignored Durso's out of pocket loss; (2) the cost of laundering the king-size comforters demonstrates an ascertainable loss; (3) buying a replacement washer at $799 demonstrates an ascertainable loss.

Under the CFA, an "ascertainable loss," is "a cognizable and calculable claim of loss due to the alleged CFA violation." *Theidemann v. Mercedes-Benz, LLC*, 183 N.J. 234, 249 (2005). "Ascertainable loss" is a broad concept that embraces more than a monetary loss. *Union Ink Co. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App.

Div. 2002). An ascertainable loss may occur "when a consumer receives less than what was promised." *Ibid*; *see also Miller v. Am. Family Publishers,* 284 N.J. Super. 67, 90-91 (Ch. Div. 1995) ("For their money, they received something less than and different from what they reasonably expected in view of defendant's presentations. That is all that is required to establish ascertainable loss.").

Judge Cavanaugh applied a standard that too rigorously required Durso to actually quantify his loss. Plaintiff must merely allege that the loss is *quantifiable*. By alleging that he paid $549.97 for a washer and that it did not wash a king-size comforter as promised, the Plaintiff has alleged that he received "less than what was promised." *Theidemann*, 183 N.J. at 249. Moreover, if the $799 washer is the cost of a comparable washer, then the measure of damages is at least the $549.97 he paid for the defective washer plus the $250.03 it would additionally cost to purchase a washing machine that could wash a king-size comforter. Finally, the allegation that he had to pay money to have his king-size comforter laundered also demonstrates an ascertainable loss.

**C. DTPA**

Judge Cavanaugh dismissed Cole's DTPA claim on the grounds that she had not plead "actual damages" essential to a cause of action under the Texas Deceptive Trade Practices Act. Specifically, the Cavanaugh Opinion held that Cole's claim that her second washing machine was "of lesser value than the washer promised" was "too ambiguous to sufficiently demonstrate actual damages." (Cavanaugh Opinion at 16-17). Plaintiff Cole fortified the SAC by alleging that she "incurred the out of pocket costs of additional water and electricity required by the necessary and continual use of the heavy duty cycle to get clothes clean using the replacement washer." (SAC at ¶ 30).

"Although the term 'actual damages' is not defined within the D.T.P.A., actual damages means those recoverable at common law." *Great State Petroleum, Inc. v. Arrow Rig Serv., Inc.*, 706 S.W.2d 803, 807 (Tex. App. 1986). By pleading that she paid more for more water and electricity than expected, Plaintiff has cured any deficiency in the pleadings with regard to the actual damages element of her DTPA claim.

**D. Walker's Fraudulent Concealment Claim**

Reliance upon Defendant's deception is one of the elements of a fraudulent concealment claim. *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App. 1997). Samsung argues that Walker's fraudulent concealment claim should be

dismissed because Walker does not allege that he relied upon any deceptive advertising. Plaintiffs do not dispute this, acknowledging that Walker did not purchase the washer from Samsung but that it came with a house that he purchased. Because Walker has not plead reliance on any action of Samsung, Walker's fraudulent concealment claim is dismissed with prejudice.

**E. Negligent Misrepresentation**

Defendant urges reconsideration of Judge Cavanaugh's decision not to dismiss the negligent misrepresentation cause of action. Finding no error in Judge Cavanaugh's decision with respect to Cole or Durso, the court will deny the motion with respect to their claims.

However, Walker's claims should be dismissed. One of the elements of a negligent misrepresentation claim is reliance upon a misrepresentation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Walker does not allege that he viewed any advertisements about the washer. Because Walker has not alleged any reliance, Samsung's motion is granted with respect to Walker's negligent misrepresentation claim.

**F. Breach of Express and Implied Warranty Claims**

It is useful to begin the discussion of the breach of express and implied warranty claims by examining the underlying Limited Warranty that came with the Washers. The Limited Warranty, which was located at the end of the User Manual, stated, in relevant part:

> This SAMSUNG product, as supplied and distributed by SAMSUNG ELECTRONICS, INC. (SAMSUNG) and delivered new, within the original carton to the original purchaser, is warranted by SAMSUNG against manufacturing defects in materials and workmanship for a limited warranty period of: One (1) year part and labor, Two (2) years Control Board Parts, Three (3) years stainless tub part, Ten (10) years washing motor part. This limited warranty begins on the original date of purchase, and is valid on products purchased and used in the United States. To receive warranty services, the purchaser must contact SAMSUNG for problem determination and service procedures.
>
> . . . . . . . . . . . . . . . . . . . .
>
> SAMSUNG will repair, replace, or refund this product at our option and at no charge as stipulated herein, with new or reconditioned parts or

> products if found to be defective during the limited warranty period specified above. . . . Replacement parts and products assume the remaining original warranty, or ninety (90) days, whichever is longer.
>
> . . . . . . . . . . . . . . . . . . . .
>
> EXCEPT AS SET FORTH HEREIN, THERE ARE NO WARRANTIES ON THIS PRODUCT EITEHR EXPRESS OR IMPLIED, AND SAMSUNG DISCLAIMS ALL WARRANTIES INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE.

(Washer User Manual, attached to the Declaration of Samsung's Counsel ("User Manual") at 36-37).

**i. Plaintiffs' Fortification of the Deficiencies in the ACAC Regarding Breach of Warranty Claims**

Judge Cavanaugh dismissed all the Plaintiffs' express and implied warranty claims in the ACAC because: (a) Plaintiffs failed to allege that they notified Samsung of the defects within the one-year Limited Warranty period; (b) Plaintiffs did not contest that the product came with a clear and conspicuous disclaimer of warranties beyond the express one-year Limited Warranty period; (c) Plaintiffs failed to alleged that the disclaimers were unconscionable. (Cavanaugh Opinion at 21). In the SAC, Plaintiffs attempt to fortify these deficiencies with varying degrees of success discussed below.

***a. Notice to Samsung***

*1. <u>Durso</u>*

In the SAC, Durso fortifies his allegations by noting that he called Samsung about a month after he purchased his washer to complain about the defect. (SAC at ¶¶ 13, 17). Defendant concedes that Durso's service call occurred within the one-year Limited Warranty period.

*2. <u>Cole</u>*

Cole now alleges that she contacted Samsung several times within the first six months of her purchase and that Samsung eventually replaced the original washer with another defective model. (SAC at ¶¶ 25-28). Cole does not allege that she complained about the second washer, and Samsung argues that this failure precludes

her breach of warranty claims. Cole's position is that Samsung already knew that her first and second washers were defective and knowingly took ineffective steps until the one-year warranty expired.

Under Texas's Business and Commerce Code § 2.607, a plaintiff must provide notice to the manufacturer of a defective product as a condition precedent to filing a lawsuit for breach of express or implied warranty. *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 200 (Tex. App. 2003); *Martin v. Home Depot U.S.A., Inc.*, 369 F. Supp. 2d 887, 893 (W.D. Tex. 2005) (*citing U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 199 (Tex. App. 2003)). The purpose of the notice requirement is to give the seller the opportunity to inspect the product, determine whether it is defective, and allow the seller a chance to cure the breach. *Wilcox v. Hillcrest Memorial Park of Dallas*, 696 S.W.2d 423, 423 (Tex. App. 1985). Under Texas law, the critical question is not whether Samsung knew that the washing machine was defective, but whether Samsung knew that Cole considered Samsung to be in breach of contract. *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 972 (5th Cir. 1976) ("The notice of the breach required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach.").

Cole has not met the notice requirement. To find otherwise would defeat the purpose of the notice requirement. Even if Samsung knew that the second washer had the defects of which Cole complaints, she cannot prove that Samsung knew she considered the second washer to be in breach of contract without her having notified Samsung. This is all the more true given that the problems with the second washer, which were inefficiency, noise, and an unreliable spin cycle, were considerably less severe than the mold problem with the first washer. Without alleging that she gave Samsung notice of a continuing breach of contract with the replacement washer, Plaintiff cannot plausibly allege that Samsung would not have refunded the washer or replaced it with a non-defective one as the warranty required.

The court is cognizant that Plaintiff is alleging that Samsung pressured Plaintiff into reticence by providing a washer that it knew would manifest its defect after the expiration of the express warranty. The court is also cognizant that the notes to Texas Commercial Code Section 2.607 state that the purpose of the notice requirement is "to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." Tex. Bus. & Com. Code Ann. § 2.607. However, consumer fraud statutes can address this particular behavior and are better suited to do so than the Uniform Commercial Code. Extending the breach of warranty claim to Cole's case would unnecessarily and imprudently dilute the notice requirement for a breach of warranty claim.

For these reasons, we find that Cole has not met the notice requirement for bringing claims for breach of express or implied warranty. Cole's claims for breach of express and implied warranty are dismissed with prejudice.

*3. Walker*

Samsung argues that Walker cannot bring a cause of action for breach of express or implied warranty because he notified Samsung outside the one-year warranty period. The legal standard does not require that the complaint be made within the Limited Warranty period; only within a reasonable amount of time. Tex. Bus. & Com. Code Ann. § 2.607(c). Walker, however, never states when he notified Samsung of the defect. The SAC notes only that his washing machine was manufactured in March 2007 and that he complained to Samsung. Without pleading when he complained to Samsung, there is no way to tell whether Walker gave notice within a reasonable amount of time. Walker therefore has not plead satisfaction of the notice requirement.

***b. Clearness and Conspicuousness of Disclaimer***

New Jersey law generally recognizes disclaimers and will enforce them as long as they are clear and conspicuous. *See* N.J.S.A. 12A:2-316; *Realmuto v. Straub Motors, Inc.*, 65 N.J. 336, 341-42 (1974); *Gladden v. Cadillac Motor Car Div.*, 83 N.J. 320, 331 (1980). To be conspicuous, a disclaimer must be "so written that a reasonable person against whom it is to operate ought to have noticed it." *Gladden*, 83 N.J. at 331.

The disclaimer at issue was located on the last few pages of the User Manual. (Declaration of Samsung's Counsel ("Samsung Decl.")). Plaintiffs argue that the location of the disclaimer at the end of the User Manual meant that it was not disclosed to the Plaintiffs until the washer had been delivered and installed. (Opposition Brief at 31). The Complaint thus plausibly alleges that a reasonable person would not have noticed the disclaimer.

The effect of this finding is that the disclaimer does not preclude Durso's claim for breach of express or implied warranty. Walker, however, cannot benefit from this finding because he admits that he did not purchase the washer. The placement of the disclaimer in the User Manual thus would not be relevant to his acquisition of the washer.

***c. Unconscionability of Disclaimer***

*1. Durso*

"In determining whether a contractual provision or clause is unconscionable, courts look to two factors: 1) unfairness in the formation of the contract, or procedural unconscionability, and 2) excessively disproportionate terms, or substantive unconscionability." *Alban v. BMW of N. Am.*, CIV. 09-5398 DRD, 2011 WL 900114, at *8 (D.N.J. Mar. 15, 2011) (*citing Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 564-65 (Ch. Div. 2002)). "Procedural unconscionability 'can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.'" *Id.* (*quoting Sitogum Holdings*, 352 N.J. Super. at 564). "Substantive unconscionability, on the other hand, 'simply suggests the exchange of obligations so one-sided as to shock the court's conscience.'" *Id.* (*quoting Sitogum Holdings*, 352 N.J. Super. at 565).

Courts in this district have repeatedly found warranty disclaimers unconscionable where class members have no meaningful choice in determining the terms of a warranty, there is a gross disparity of power between the class and the manufacturer, the terms of the warranty favor the manufacturer over the buyer, and the manufacturer had knowledge of a defect. *See Henderson v. Volvo Cars of N. Am., LLC*, CIV. 09-4146 (DMC), 2010 WL 2925913, at *9 n. 7 (D.N.J. July 21, 2010); *In re Samsung DLP Television Class Action Litig.*, CIV. 07-2141GEB, 2009 WL 3584352, at *15-16 (D.N.J. Oct. 27, 2009); *Payne v. Fujifilm U.S.A., Inc.*, 2007 WL 4591281 (D.N.J. Dec. 28, 2007). Apparently following the direction of these district court cases, the Plaintiffs added the following allegations to the SAC:

> Plaintiffs and the other members of the class had, and have, no meaningful choice in determining the time limits of the express and implied warranties. Moreover, a gross disparity in bargaining power exists between Samsung and the Plaintiffs and other class members. . . . Samsung's attempts to limit the express and implied warranty to one year, as well as its attempt to disclaim all implied warranties is unconscionable under these circumstances.

(SAC at ¶¶ 70, 72).

Samsung's argument that the SAC does not spell out how the "disparity in bargaining power" existed is not convincing. Samsung submitted its User Manual

with this motion, thus demonstrating that the SAC put Samsung on notice of the allegation that the warranty's being buried inside the User Manual was unconscionable. With the disclaimer located inside the User Manual, it is plausible that Durso had no knowledge of it until his washer was delivered and installed. (*See* Opposition Brief at 31). Moreover, the terms of the warranty grossly favor the seller. The buyer would have no choice but to accept or reject the entire list of disclaimers of express and implied warranties. These conditions demonstrate a disparity of power.

Plaintiffs have therefore plead that there was a disparity of power between the class and the manufacturer, that the terms of the warranty favor the manufacturer over the buyer, and that the manufacturer had knowledge of defects. Moreover, we consider the allegation that Defendant slipped a warranty that lasted only a year into a place where Plaintiffs were unlikely to see it. These allegations plausibly spell out a claim of an unconscionable warranty disclaimer.

*2. Walker*

Under Texas law, a contractual clause is unenforceable if, "the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties *made the contract*." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (emphasis added). Since Walker made no contract with Samsung, he cannot prove the existence of unconscionability where he is concerned. The court therefore finds that Walker has not plead unconscionability.

This is the third version of the Complaint, and Walker still has not been able to plead claims for breach of express and implied warranty. These claims are therefore dismissed with prejudice.

Having determined that only Durso has remedied the three defects with the warranty claims that Judge Cavanaugh found, the court next turns to the Defendant's remaining argument that, with the facts alleged, Durso does not state a claim for a breach of the implied warranty for a particular purpose or the implied warranty of merchantability.

**ii. Implied Warranty for a Particular Purpose**

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." N.J.S.A. § 12A:2-315. "To state a claim for breach of the implied warranty of fitness for a particular purpose, a plaintiff

must allege that: (1) the seller had reason to know the buyers' particular purpose; (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer must actually rely upon the seller's skill or judgment." *Pappalardo v. Combat Sports, Inc.*, CIV.A. 11-1320 MLC, 2011 WL 6756949 (D.N.J. Dec. 23, 2011) (*citing Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 92 (3d Cir. 1983)).

Defendant argues that Plaintiffs have failed to allege that Samsung had any reason to know of any "particular purpose" that Plaintiffs had at the time of sale or that they relied upon Samsung's skill or judgment in making their purchase. This argument is not persuasive. By advertising that the Washers could wash king-size comforters, Samsung had reason to know that any purchaser of the Washers might rely on the advertisements for the particular purpose of washing a king-size comforter. Durso alleges that he did rely upon Samsung's advertising that the washer would specifically wash a king-size comforter. Durso has thus plead the elements of a claim for a breach of implied warranty for a particular purpose.

### iii. Implied Warranty of Merchantability

The implied warranty of merchantability requires that the article is of the general kind described and reasonably fit for the general purpose for which it should have been sold. *Adams v. Peter Tramontin Motor Sales, Inc.*, 42 N.J. Super. 313, 321 (App. Div. 1956). "'Merchantability' requires that a product conform to its ordinary and intended use." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 458 (D.N.J. 2012). It does not require that the goods precisely fulfill the expectation of the buyer. Instead, it only guarantees a minimum level of quality. *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011).

Here, the intended use of a washer is to thoroughly clean clothes. Durso does not allege that the washer failed in its ordinary function of washing clothes. Therefore, his claim for breach of the implied warranty of merchantability will be dismissed.

## IV. CONCLUSION

For the reasons set forth above, the motion is granted with respect to Walker's claims. The motion is granted with respect to Cole's warranty claims. The motion is granted with respect to Durso's claim for breach of the implied warranty of merchantability. The motion is otherwise denied. All dismissed claims are dismissed with prejudice. To clarify, the remaining claims are:

Count 1: New Jersey Consumer Fraud Act (Durso only)
Count 2: Texas Deceptive Trade Practices Act (Cole only)
Count 3: Fraudulent Concealment/Nondisclosure (Durso and Cole only)
Count 4: Breach of Implied Warranty (Durso's Breach of Implied Warranty for a Particular Purpose claim only)
Count 5: Breach of Express Warranty (Durso only)
Count 6: Negligent Misrepresentation (Durso and Cole only)

/s/ William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 25, 2014**